Bacon *v.* Fay.

MARIA J. BACON and husband

*v.*

THORNTON W. FAY et ux., ELLEN M. FAIRCHILD, ALFARETTA
E. WHITE and husband, ADELAIDE V. GEISHAKER and hus-
band, DAVID J. PANCOAST, GLADYS M. FAY FILLEBROWN
and husband, ROY ALTON FAY, LOUISA FAY et al.

[Submitted January 27th, 1902.   Decided March 26th, 1902.
Filed September 8th, 1902.]

1. Complainant and eight brothers and sisters became entitled, on their
father's death, to equal shares in certain realty. On bill for partition by
one of the heirs, their interests were purchased by the other seven, one
of whom took title as trustee. Subsequently there was a partial amicable
partition, by which three of the seven received portions of the land in sat-
isfaction of their interest, conveyance being made by the trustee. It was
claimed that one of the remaining four had received rents and profits, not
accounted for by him, sufficient to extinguish his interest. In a suit by
the widow and heirs of this heir against the trustee, complainants obtained
a decree for costs, execution issued thereon, and the premises were pur-
chased by complainants' solicitor. The trustee mortgaged his interest in
the premises, the mortgage was foreclosed, and the same solicitor pur-
chased at the foreclosure sale. In a later suit by two of the parties against
the trustee and the purchaser at the foreclosure sale, it was decreed that
the claim of the purchaser at the foreclosure sale had been satisfied out of
the trustee's share of the bid at such sale, and that complainants were
each entitled to an undivided one-seventh of the premises unaffected by
either the execution or foreclosure sale; but no proceedings were had on
this decree. Thereafter complainant purchased the interest of one of the
heirs, who had received no property on the amicable partition.—*Held*, that
under the decree in the former suit complainant was entitled to seven
twenty-firsts of the proceeds of sale of the premises, each of the complain-
ants in the former suit to three twenty-firsts, and that if the eight twenty-
firsts remaining should not be sufficient to satisfy the principal, interest
and costs on the mortgage, the deficiency should be paid from the com-
plainant's share, provided that not more than one-third of the amount due
on the mortgage should be taken from such share.

2. Complainant's title was wholly equitable, so as to be cognizable in
the first instance in a court of equity, and not subject to the rule that a dis-
puted undivided share in land must be first established at law before the
commencement of equitable proceedings for partition.

3. The mere fact that one of the parties to the suit at bar was a witness in a former litigation, and therefore had knowledge thereof, could not operate to render the decree therein binding on her.

4. A parol contract for the partition of lands is not within the prohibition of the statute of frauds after execution by written conveyances.

On bill for partition and special relief. Heard on bill, answer and proofs in open court.

*Mr. John J. Crandall,* for the complainants.

*Mr. David J. Pancoast,* for the defendants Mrs. Fillebrown, Roy Alton Fay and himself.

*Mr. Eli H. Chandler,* for the defendant Geishaker.

PITNEY, V. C.

The complainant Mrs. Bacon claims an undivided one-third interest in a small portion of the real estate of which Cyrus J. Fay died seized and intestate in 1881, situate in the city of Hammonton and county of Atlantic, and being the same land which was in controversy in the case of *Fay* v. *Fay,* reported in *5 Dick. Ch. Rep. 260;* and again, in the case of *Geishaker* v. *Pancoast, 12 Dick. Ch. Rep. 60,* and, on appeal, *13 Dick. Ch. Rep. 537.*

The complainant, who is one of the heirs of Cyrus, claims title to an equal undivided one-third part of the premises in question, not on her own account as heiress, but as grantee of the children of her deceased brother Edwin.

Her allegation is that she has received, as heiress, her share of the property.

It is admitted that Cyrus J. Fay died in the year 1881, seized of valuable lands in the counties of Camden and Atlantic, leaving nine children surviving him, namely, Edwin, Thornton, William, George, B. Franklin, Adelaide Geishaker, Maria Bacon, (the complainant herein), Ellen M. Fairchild and Alfaretta E. White.

In 1885 William filed a bill for partition, with the result that

there was a judicial sale by Master Pancoast, in which seven. of the children (being all of the heirs except the complainant. William and the infant children of B. Franklin Fay, previously deceased) united to buy in and hold the premises for their own. benefit.

The total sale amounted to about $12,000. Money enough. was raised and paid to satisfy the complainant William and' the infant children of B. Franklin, deceased, and the title was taken in the name of Thornton for the benefit of himself and his six brothers and sister other than William. The seven for whose benefit it was held executed releases to the master for their shares in the proceeds, without the receipt of any cash.

George Fay, from 1881 till his death in 1890, lived, separate from his wife, upon the portion of the premises in Hammonton here in question, and received the rents of those and of some other rent-producing premises there situate.

In 1888, or thereabouts, Thornton sold and conveyed the property in Camden, for some $8,000 or $9,000, and out of the proceeds of that sale and the rents received paid the expenses of the sale and the two shares of William and B. Franklin, and made a division of the net proceeds between himself and five of his brothers and sisters, *cestuis que trustent,* excluding George. Such is the evidence given in the present suit. And it tends to show that George made no claim to the proceeds of the Camden sale, because he had not accounted for the rents and profits already received by him; and according to the evidence given in this cause he declared that he proposed to live out his share of the property.

Subsequently an actual partial partition, agreed to by parol by all parties interested, was made of the premises in Hammonton. A certain tract of land called the homestead was taken by Mrs. Bacon, the complainant herein, and Thornton, in full. of their shares in the Hammonton property. This transaction. was accomplished by a conveyance from Thornton to Mrs. Bacon for the consideration of $2,500, and the payment in cash by Mrs. Bacon to Thornton of $250 and the giving of a mortgage for $1,000, the shares in the Hammonton property being esti- mated to be worth $1,250 each.

Bacon *v.* Fay.

Another piece of the Hammonton property was conveyed to Mrs. Fairchild in full of her share.

So that, according to the theory of the complainant herein, the only persons interested in the remainder of the property (that here in question) were Edwin (who died subsequently), Mrs. Geishaker and Mrs. White; George, according to their theory, having, in effect, received from the rents enough to satisfy his share in the whole property. It is on that basis that Mrs. Bacon claims an undivided one-third interest in the premises here in question, as assignee of Edwin's children.

It was shown in evidence that this setting off a portion of the Hammonton property to the three persons named—Mrs. Fairchild, Mrs. Bacon and Thornton—was upon the basis of an appraisement made by the equitable owners of all the property there situate at about $7,500, so that each of the six would receive about $1,250; and it is to be inferred from the evidence that the property here in question was supposed, in its then condition, to be of sufficient value to give the three—Mrs. Geishaker, Mrs. White and the children of Edwin—a share equal to that of the three to whom conveyances were made. The land was then covered by buildings and improvements, and occupied by George. Those improvements were afterwards consumed by fire, and were uninsured.

George's widow and two daughters, who had been living in Massachusetts, filed their bill in 1892 against Thornton, claiming (as amended) one-seventh of the real estate which remained, being that here in question. By their bill they set up the trust which they asserted arose out of George's release, along with that of six of his brothers and sisters, to the master. The other *cestuis que trustent* were not made parties to that suit, so that whatever decree was made therein bound Thornton only.

The cause was first heard on demurrer (as reported in *5 Dick. Ch. Rep. 260*), and the trust established. The answer set up, in effect, that George had been paid by Thornton his whole share in the estate, whereby his share became vested in Thornton. That issue was found against Thornton, but an account was ordered, and it was held that Thornton might hold George's one-seventh share until the amount that was due for rents, &c.,

was paid; and an order of reference was made to a master to ascertain the state of the accounts between George and Thornton. That order of reference was never pursued, and no final decree was ever made in the cause. It thus appears that the issue there was quite different from that herein.

Subsequently Thornton mortgaged the premises here in question to one Stout for $500, and Stout foreclosed his mortgage, and the property was purchased at sheriff's sale by Judge Pancoast, in the interest of his clients, the children of George. He had previously obtained a decree and execution for costs against Thornton in the cause against him, and levied upon and sold the interest of Thornton in the premises at sheriff's sale, and himself purchased at that sale.

In 1897 Mrs. Geishaker and Mrs. Alfaretta White filed their bill in this court against Pancoast, Thornton and George's children. That bill sets up the facts of the conveyance by Thornton to Mrs. Fairchild of a portion of the Hammonton premises, and to Mrs. Bacon of another portion of those premises, of double the value of those conveyed to Mrs. Fairchild, and of the receipt by him (Thornton), on his own account, of one-half in value of what was conveyed to Mrs. Bacon; but it does not state that such conveyances were made by way of an amicable, partial partition of the Hammonton property, nor that it was received by them (Mrs. Fairchild, Mrs. Bacon and Thornton) in satisfaction of their shares in that property; nor did it set up the facts upon which it is claimed in this suit that the share of George was satisfied out of the rents; nor does the bill distinctly state what the pleader there conceived were the rights of Mrs. Geishaker and Mrs. White sought to be established by the bill; nor does it contain any prayer whatever, except for process.

The bill was evidently aimed solely at the Pancoast title derived under the foreclosure, the result being that the extent of the interest claimed by the complainants (Mrs. Geishaker and Mrs. White) could only be ascertained by inference.

Pancoast and his clients did not take advantage of the defective prayer in the bill, but answered, setting up his title under the foreclosure, and also that under the execution out of this court against Thornton. The case was dealt with by me, as

reported in *12 Dick. Ch. Rep. 60*, with the result there stated.
The decree (which I think was prepared by the court without
further suggestion from counsel) declared that the complainants
were, as against the defendants in that cause, each entitled to
the equal undivided one-seventh part of the lands mentioned
in the bill, subject to the encumbrance of the mortgage executed
by Thornton to Stout to secure the sum of $500, and that the title
of Pancoast derived from the sheriff's sale under the decree in
foreclosure based on the Stout mortgage was, as against the com-
plainants, no more than a mortgage on the premises to secure
the amount due on said decree for principal, interest and costs.
It further decreed that the right, title and interest of Thornton
should be sold to pay, in the first place, the amount due on the
Stout mortgage, and, if the proceeds of that sale were insuffi-
cient, then the complainants should have the right in equity to
redeem their interest of one-seventh each in the premises by
paying the amount due upon the Stout mortgage, after deduct-
ing the amount produced by the sale of Thornton's interest.
It further decreed that there should be an accounting of the
rents and profits; and further, that no right was acquired by
Pancoast, under the sale, by virtue of the execution for costs
issued out of this court; and decreed a sale of Thornton's in-
terest by a master.

With regard to the extent of the interest of Thornton in the
premises, I assumed, as appears on page 67 of the report, that
Thornton did have some interest in the premises, but what in-
terest did not appear; and I may add here that, looking at the
printed book in that case, I find that the facts set up in that
bill, which are relied on herein to eliminate the shares of Thorn-
ton, Mrs. Geishaker and Mrs. Bacon, were not proven; neverthe-
less, I dealt with Thornton's share as uncertain.

When that case came before the court of errors and appeals
(as reported in *13 Dick. Ch. Rep. 537*) the court assumed (at
*p. 542*) that Thornton's interest had been advanced to five-
sevenths through settling with four of his brothers and sisters;
and they held that the decree which I advised was not suffi-
ciently favorable to the complainants, and that Stout's mortgage
and the execution out of this court were fully satisfied out of

Thornton's share in the bid—about $1,115—which Pancoast made at the mortgage sale; but they declared that the decree should be affirmed because the complainants had not appealed. I am constrained to think that that statement of Thornton's interest was based on an erroneous view of the facts. However, be that as it may, notwithstanding the opinion declared that the decree would be affirmed as against all parties because the complainants had not appealed, I find, by looking at a certified copy of that decree, that the court decreed as follows: "It is, therefore, on this 29th day of June, 1899, ordered, adjudged and decreed that the decree of the chancellor be modified to the effect that the complainants are each severally seized of and entitled to an undivided one-seventh of the fee of the said premises, free and clear of the lien of the Stout mortgage, and unaffected by either of the sheriff's sales and conveyances to the said Pancoast, with costs to respondents, and that the record and proceedings," &c.

No proceedings have been had in this court on that decree.

The children of Edwin, from whom the complainant herein derives title, were not parties to that suit, and are not affected thereby.

Thornton, Mrs. Geishaker, Mrs. White, Pancoast and the children and widow of George are parties to this suit, and the cause is in a shape for a partition as prayed by the bill; and I may add that it is the first time that the matter has been presented to this court in a manner which accords with those rules and that practice of this court which are necessary in order to do complete justice to all parties.

The defendant Pancoast, by his answer, puts the complainant upon proof of the principal allegations of her bill, sets up his title under the sheriff's sales above mentioned, and then submits to the court that the questions raised by the bill are properly cognizable by a court of law, and that the complainant should establish her title at law before she can proceed and ask this court for a partition.

With regard to this last point, it is only necessary to say that the complainant has no standing whatever at law. Her title is

27

Bacon *v.* Fay.

purely equitable; and it is not necessary to cite authority for the familiar principle that a person who claims an equitable title to an undivided share in land is compelled to proceed in this court, and is not within the rule that where the title to an undivided share in land is in dispute the party whose title is disputed must establish it at law before coming to this court for a partition.

If the facts be as I have stated them above, it is at once manifest that the defence interposed by Thornton to the suit of 1892, brought against him by the widow and heirs of George, was conducted, to some extent at least, upon an erroneous basis. One of the witnesses sworn in this cause in support of the complainant's theory was sworn in that cause; but no transcript of the evidence therein was introduced, or other mode adopted to contradict her. The apparent object of Mr. Pancoast, in showing the fact that one of the parties to this suit was sworn in the case of *Fay* v. *Fay*, was to demonstrate that she had notice of that suit. Granting that she had notice, clearly she could not control Thornton in his defence, and is in nowise responsible for it.

Again, the suit of 1897, brought by Mrs. Geishaker and Mrs. White against Pancoast, must also have been conducted, on the part of the complainants, upon an erroneous basis of fact. The counsel who acted for Mrs. Geishaker and Mrs. White could not have fully understood the real facts of the case, for it is manifest that the failure, so far as there was a failure, to state all the facts, was entirely against the interest of his clients. This misunderstanding is easily accounted for when we take into consideration the mental characteristics, as manifested on the stand, of these several Fay heirs; and I can easily believe that their counsel first obtained cognizance of the real facts just before he brought the present suit. It was manifest to me that the witnesses never understood just how, at the partition sale of 1886, their rights in the estate were preserved. In fact, I doubt if all of them understood that there was a sale by a master. The only sale which seemed to have impressed itself upon their minds was that made by Thornton of the Camden

property in 1888, followed by the subsequent division of the proceeds of that sale among them.

Here and now, for the first time, all parties interested are brought before the court, and, for the first time, all their rights are set out with some regard to the rules of pleading.

With regard to the proof of the partial partition of the Hammonton property, by conveyances of portions of it to Mrs. Fairchild, Mrs. Bacon and Thornton, that rests wholly in parol. The conveyances, or certified copies thereof, were not produced; but no objection was made to that mode of proof at the hearing. Mrs. Fairchild testified to it, as against herself; Mrs. Geishaker admitted it by her answer, and at the hearing testified to it; Mrs. Bacon also testified to it, as did Mrs. White. In so doing those persons were all swearing in their own favor. The heirs of George were represented by Mr. Pancoast, and he, as I said, made no objection to parol proof. The only other person interested was Thornton, and he did not appear, but his interest, be it more or less, was vested in Mr. Pancoast. So that the only person interested in objecting to parol proof was Mr. Pancoast. If objection had been made on that score, of course, the copies of the conveyances could have been produced. The only point upon which there could have been the least room for contest was as to whether those conveyances were made by way of partition, or, in other words, in satisfaction of the interest of the grantees in the Hammonton property. That I think was satisfactorily proven. It is true that the proof was by parol; but it was proof of the disposition of a purely equitable interest, and the parol contract established was executed by conveyances made, and such execution of the contract saves it from the effect of the statute of frauds.

The only doubt that I have had upon the facts is as to whether the proof was sufficiently clear that George's equitable share in the property had been extinguished in the manner alleged; and, upon a careful review of the evidence, I am constrained to hold the affirmative—that it was extinguished.

If, then, the cause was not complicated and embarrassed by the decrees in the former suits, I should come, without hesitation, to the conclusion that the premises here in question, at

the time they were mortgaged by Thornton to Stout, were held by him solely for the benefit of his two sisters, Mrs. Geishaker and Mrs. White, and the children of his brother Edwin, now represented by Mrs. Bacon, the complainant herein, and that their original interest therein of one-seventh each had been advanced to one-third each by their giving up their interest in the other pieces of property which were conveyed to Mrs. Fairchild, Mrs. Bacon and Thornton, and by the giving up of their share in the rents and profits received by George by way of extinction of his interest. And, following the decision in the case of *Geishaker* v. *Pancoast,* I should be disposed to hold that they were subject only to the Stout mortgage put thereon by Thornton, and that the premises, being presumably incapable of division, should be sold, and out of the proceeds the amount of the mortgage should be paid, and the balance divided into three equal shares between Mrs. Geishaker, Mrs. White and the complainant.

It remains to be seen what is the effect of the previous decrees. That in the case of the widow and heirs of George against Thornton (1892) may be laid entirely out of view, except so far as the supposed share of Thornton became subject to the dominion of complainants therein. This results from the fact that none of the other parties interested were made parties to that suit.

Coming now to the decree in the case of Geishaker and White against Pancoast (1899), a more serious problem is presented. The proceedings therein are clearly not binding on the complainant herein, and cannot vary the decree as to her. Neither Mrs. Bacon nor the children of Edwin were made parties thereto.

But I do not see how they can be ignored as to Judge Pancoast.

The logical result of giving Mr. Pancoast and Mrs. Geishaker and Mrs. White their several rights, as declared by that decree, will be to give to complainant seven twenty-firsts of the proceeds of the sale of the premises, less one-third of the amount due on the Stout mortgage, subject to a further contingency presently to be mentioned; to give to Mrs. Geishaker and Mrs. White each three twenty-firsts thereof—making thirteen twenty-firsts to the three Fay heirs here represented; and eight twenty-

firsts to Pancoast; and if eight twenty-firsts of the whole proceeds of sale shall not suffice to pay the amount due on the Stout mortgage, then the amount that it shall fall short must be paid out of the complainant's share, provided that no more than one-third of the amount due on the Stout mortgage shall be taken from her share.

No proof was offered in this cause as to what became of the surplus, over and above the decree, which resulted from Pancoast's bid of $1,115 at the foreclosure sale. It is to be presumed that he took that surplus as purchaser under the execution out of this court on the decree for costs. Such presumption must have been the basis of the declaration in the decree of the court of errors and appeals to the effect that Mrs. Geishaker and Mrs. Bacon hold each one-seventh interest in the premises, free and clear of the lien of the Stout mortgage and unaffected by either of the sales by the sheriff and conveyance to Pancoast. So that it appears that he is practically out of pocket only the amount which he paid for the Stout mortgage. But from this consideration of the facts it also results that he has received nothing for the supposed interest of Thornton in the premises, and for this interest, on the facts as I have found them, he is not entitled in equity to receive anything.

If, then, he shall receive out of the proceeds of the sale, on a decree framed in the manner just proposed, the amount of the Stout mortgage, he will have received, according to the facts as developed in this case, all that he is entitled to; and the only injustice resulting therefrom will be the practical shifting of a part of the burden of the Stout mortgage from the share of Edward, represented by the complainant herein, to the shares of Mrs. Geishaker and Mrs. White; and for that result those ladies are probably responsible in not making known to their counsel the true facts of the case to be set up in their bill, and in not enforcing the rights arising thereout in their suit against Pancoast.

As counsel have not discussed this view of the case, I will, if they so desire, give them an opportunity. If they do not desire to be heard, I will advise a decree framed on the plan just suggested.

The costs of the complainant will come out of the fund.